IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

————————————————————————

PETE CHALIF,

                              Plaintiff,

        v.                                    Civil Action No.
                                              9:05-CV-1355 (LEK/DEP)

ELIOT SPITZER, *et al.*,

                              Defendants.

————————————————————————

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

PETE CHALIF, *Pro Se*

FOR DEFENDANT:

HON. ANDREW M. CUOMO                  MEGAN M. BROWN, ESQ.
Attorney General of                  Assistant Attorney General
the State of New York
615 Erie Blvd., Suite 102
Syracuse, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        Plaintiff Pete Chalif, a former New York State prison inmate who is

currently undergoing psychiatric treatment under the auspices of the New

York State Office of Mental Health ("OMH"), has commenced this action alleging deprivation of his civil rights.  In his complaint, which names eighteen defendants, among them such high ranking officials as former New York State Governor Eliot Spitzer, who at the relevant times served as the New York State Attorney General; the Commissioner of the New York State Department of Correctional Services ("DOCS"); the former Director of the Central Intelligence Agency ("CIA"); and the Director of the Federal Bureau of Investigation ("FBI"), plaintiff asserts various constitutional claims stemming from an alleged, politically-motivated conspiracy, the object of which was to cause his death in order to silence him, the failure of prison officials at the various facilities in which he was housed to protect him from harm by fellow inmates, and excessive force used against him by certain corrections workers.  Representative of his claims are the allegations that former Governor Spitzer, former CIA Director George Tenent, and FBI Director Robert Mueller jointly have ordered his assassination, and the assertion that there are approximately 10,000 state law enforcement officers operating under cover as DOCS prisoners as part of a "scam. . . to falsely inflate (NYSDOC) prisoner

census to receive federal funding."[1]  Amended Complaint (Dkt. No. 15) ¶ 38C.  Plaintiff seeks declaratory relief, an injunction directing that he be placed in administrative segregation or transferred into federal custody, and recovery of compensatory and punitive damages.

Currently pending before the court is a motion by the defendants seeking judgment on the pleadings dismissing plaintiff's complaint.  In their motion, defendants assert that despite having been given one final opportunity to state objective facts which would demonstrate the existence of a plausible constitutional claim, by virtue of an earlier decision in the case from the Second Circuit Court of Appeals, plaintiff has failed to do so, instead reiterating the same conclusory allegations which, while sensational, are lacking in substance and any supporting objective facts demonstrating any constitutional deprivation.[2]

Having reviewed plaintiff's complaint in light of defendants' motion,

---

[1]     In the plaintiff's words, "[t]he complaint alleges that plaintiff was and is the target of a classic Co. In. Tel. Pro. type counterintelligence operation targeting the plaintiff for political assassination because he's a white supremacist and an intelligence officer in the Nationalist Militias ect [sic]. . . ."  Plaintiff's Memorandum (Dkt. No. 84-2) at 1.

[2]     Defendants also seek the entry of an order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery pending disposition of their dismissal motion.  Since that relief was already requested and granted, *see* Dkt. Nos. 80, 81, it is not necessary to address this request.

which plaintiff vigorously opposes, I find that with the exception of

plaintiff's claim of excessive force as against defendant Brown, a

corrections sergeant, arising from an incident alleged to have occurred on

or about January 15, 2006 at the Great Meadow Correctional Facility,

plaintiff's complaint fails to allege any plausible claim of constitutional

deprivation.  I further find that pursuit of plaintiff's sole viable remaining

excessive force claim is barred by his failure to exhaust available

administrative remedies before filing suit.

I.      BACKGROUND[3]

The substance of plaintiff's claims in this action is difficult to distill,

inasmuch as his complaint states his claims in broad and general terms

regarding incidents which allegedly occurred at several different prison

facilities.  Plaintiff's claims appear to stem from his incarceration at various

facilities operated by the DOCS in whose custody he was held at the

---

[3]      Although in their responsive pleadings the defendants have denied the vast majority of them, the underlying factual allegations set forth in plaintiff's amended complaint have been accepted as true for purposes of the present motion, in light of the procedural posture of the case.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S. Ct. 73 (1994)*; DeJean v. County of Nassau*, No. CV-06-6317, 2008 WL 111187, at *1 n.2 (E.D.N.Y. Jan. 8, 2008).  As will be seen, however, the court is not required to, nor does it, accept those of plaintiff's conclusory allegations which are lacking in factual support, particularly those which are patently frivolous on their face.  *See Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999).

relevant times, including the Auburn Correctional Facility ("Auburn"), the
Great Meadow Correctional Facility ("Great Meadow"), and the Clinton
Correctional Facility ("Clinton").  *See generally* Amended Complaint (Dkt.
No. 15) ¶¶ 2-3.

Plaintiff avers that he is a former CIA Human Intelligence
("HUMINT") agent.  Amended Complaint (Dkt. No. 15) ¶ 22.  In that
position, plaintiff claims to have reported false information to former CIA
Director George Tenent and CIA Case Agent Lee Strickland at various
times, including in mid-2001, at a time when he was in DOCS custody.  *Id.*

Chalif contends that he has experienced difficulties within the DOCS
system, attributed by him as stemming from published media reports that
he is the commander of the Aryan Nations Special Forces, as well as
rumors spread by DOCS employees throughout the corrections system
that he is also a member of the Ku Klux Klan.  *Id.* ¶¶ 21-24.  Plaintiff
contends that as result of those rumors he was labeled as a racist,
requiring him to be placed in administrative segregation in December of
2001.  *Id.* ¶¶ 24-25.

Plaintiff also maintains that a directive was given by Eliot Spitzer,
with the approval of former CIA Director Tenent, FBI Director Mueller and

CIA Case Agent Strickland, that he be murdered, and additionally claims that while incarcerated, he has been subjected by certain of the defendants, including Dale Artus, Superintendent at Clinton, Corrections Sergeant J. Tedford, former Governor Spitzer, former DOCS Commissioner Goord, former CIA Director Tenent, and FBI Director Mueller, to psychological torture "via 'Death threats' Psy-Op (mind war)", *see id.*, and as a result, has suffered mental anguish and attempted to commit suicide. *Id. ¶¶ 27-28.* Plaintiff contends that despite his efforts defendants refused to place him in administrative segregation, thus causing him to be exposed to danger.[4] *Id.* ¶ 31. Plaintiff attributes defendants' efforts to have him killed to several factors, including based on their awareness that 1) "[he] is an intelligence SHARK"; 2) based upon his efforts "to have Christian Identity/Aryan Nations recognized as a religion"; 3) because of his discovery that at the direction of Attorney General Spitzer, undercover state agents whose identities are known to Chalif were placed into the DOCS systems pretending to be prisoners; and 4) "[b]ecause the plaintiff dares to petition the Government for a

---

[4]     While the bulk of plaintiff's claims concerning administrative segregation appear to relate to his efforts to be afforded such protection, as was noted earlier he also complains of having been placed in administrative segregation in or about December of 2001 based upon the belief that he was a racist. *See* Amended Complaint (Dkt. No. 15) ¶ 25.

redress of grievances." Amended Complaint (Dkt. No. 15) ¶ 38.  Plaintiff also asserts that various of the defendants have engaged in "psychological torture" apparently in an effort to force him to commit suicide.[5]  *Id.* ¶ 27.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on October 26, 2005 by the filing of a complaint, accompanied by an application for leave to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 1, 2.  By order issued on November 3, 2005 District Judge Lawrence E. Kahn conferred IFP status upon the plaintiff, but dismissed his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) as largely containing conclusory allegations which, while shocking, lacked specifics disclosing the existence of a cognizable claim against one or more of the named defendants in the case.  Dkt. No. 4.  The resulting

---

[5]      It should be noted that while in his complaint plaintiff admits having attempted to commit suicide by hanging himself on or about January 15, 2006, *see* Amended Complaint (Dkt. No. 15) ¶ 45, on October 13, 2004 he wrote to the State Commission of Correction, stating the following:

> I wish to be placed in Administrative Segregation upon my return to Clinton C.F., for the remainder of my incarceration. I am not suicidal and it is against my religious beliefs to take my own life so if I am found hung in my cell it was murder . . . .

Amended Complaint (Dkt. No. 15) Exh. 5.

judgment dismissing plaintiff's complaint was subsequently reversed on appeal by order issued on March 8, 2006, by the United States Court of Appeals for the Second Circuit, and the matter was returned to this court in order to afford plaintiff the opportunity to file a proper amended complaint.  Dkt. No. 10.

An amended complaint was subsequently received from the plaintiff, and accepted by the court for filing on or about November 7, 2006.  *See* Dkt. Nos. 14, 15.  In that amended complaint plaintiff names, as defendants, various state and federal officials and DOCS employees, including, *inter alia,* former Governor and Attorney General Eliot Spitzer, former DOCS Commissioner Glenn Goord, former CIA Director George Tenent, FBI Director Robert Mueller, and Clinton Superintendent Dale Artus, and sets forth four separate causes of action, alleging 1) violation of his First Amendment rights of free religious exercise, speech, and association; 2) cruel and unusual punishment, in violation of the Eighth Amendment; 3) violation of his substantive due process rights, as guaranteed under the Fourteenth Amendment; and 4) conspiracy to deprive him of access to the courts.  Issue was subsequently joined by the filing of an answer by the New York State Attorney General, acting on

behalf of the various defendants served in the action, on May 31, 2007.

Dkt. No. 70.  In their answer the defendants have generally denied the

material allegations of plaintiff's complaint and asserted various affirmative

defenses.[6]  *See id.*

On August 23, 2007 the answering defendants moved seeking the

entry of judgment on the pleadings, pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure.  Dkt. No. 78.  Plaintiff has since responded in

opposition to defendants' motion, Dkt. No. 84, which is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[7,8]  *See also* Fed. R. Civ. P. 72(b).

---

[6]      According to the court's records, to date defendants Tenent, Strickland, Mueller, Potts and Betters have neither been served nor appeared in the action.  In light of this fact the court has never acquired jurisdiction over those defendants, and plaintiff's complaint should be dismissed as against them, without prejudice.  *See Michaelson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1945)) (court lacks jurisdiction until defendants are properly served with the summons and complaint).

[7]      While plaintiff's submission was styled as a motion to strike defendants' motion, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, it has been treated by the court as the functional equivalent of an opposition to that motion, which was properly interposed by the defendants.  *See* Dkt. No. 85.

[8]      An application was made by the plaintiff for a preliminary injunction affirmatively mandating his transfer by the defendants into custody of the United States Bureau of Prisons.  *See* Dkt. Nos.,18, 58.   That motion was denied by order issued by Senior District Judge Lawrence E. Kahn on September 5, 2007, based upon the lack of showing that absent injunctive relief plaintiff would experience irreparable harm and

III.    DISCUSSION

A.     Judgment on the Pleadings Standard

Defendants motion is brought pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure, which governs the entry of judgment on the

pleadings.[9]  Such motions are analyzed under the familiar standard

applicable to motions brought under Rule 12(b)(6).  *See, e.g.*, *Sheppard v.*

*Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.

Ct. 73 (1994); *Wynn v. Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996)

(Pooler, J.).

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

---

additionally because plaintiff failed to name the OMH, in whose custody he was at the time of his application, as the proper party against whom injunctive relief was sought, rather than the DOCS.   Dkt. No. 82.

[9]      Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Rule 12(d) further mandates that:

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

facial sufficiency of that pleading, utilizing as a backdrop a pleading

standard which is particularly unexacting in its requirements.  Rule 8 of the

Federal Rules of Civil Procedure requires only that a complaint contain "a

short and plain statement of the claim showing that the pleader is entitled

to relief."  Fed. R. Civ. P. 8(a)(2).  Absent applicability of a heightened

pleading requirement such as that imposed under Rule 9, a plaintiff is not

required to plead specific factual allegations to support the claim; rather,

"the statement need only 'give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, __ U.S.

__, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*,

__ U.S. __, 127 S. Ct. 1955, 1964 (2007) (other quotations omitted)); *cf.*

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a

plaintiff may properly be required to illuminate a claim with some factual

allegations in those contexts where amplification is necessary to establish

that the claim is "plausible").  Once the claim has been stated adequately,

a plaintiff may present any set of facts consistent with the allegations

contained in the complaint to support his or her claim.  *Twombly*, 127 S.

Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*,

355 U.S. 41, 78 S. Ct. 99 (1957), "described the breadth of opportunity to

prove what an adequate complaint claims, not the minimum standard of

11

adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly*, 127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its

face.'") (quoting *Twombly*).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (3d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

13

While the standards by which a federal court pleading are measured are unexacting, they nonetheless require that a complaint contain "more than bare assertion of legal conclusions." *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1015 (S.D. Ohio 2006) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)); *see also In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005).  Moreover, the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as well as factors which inform analysis of dismissal motions under Rule 12, particularly in light of the Supreme Court's recent decision in *Twombly*, demand that a plaintiff do more than simply set forth allegations which, while potentially shocking, do not disclose the existence of a claim which can properly be characterized as "plausible".  *See, e.g., Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 385 (S.D.N.Y. 2007) (noting that to survive a motion to dismiss, a complaint need not allege detailed factual assertions, but must state a plausible basis for recovery rather than conclusory or speculative allegations, and as such, dismissing plaintiffs' unjust enrichment claim in light of its illogical and "ludicrous" nature); *see also Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (indicating that a complaint is considered frivolous if it

14

lacks an arguable basis in either law or fact, with factual frivolity occurring where "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations omitted))).

B.     Personal Involvement

Before turning to the specifics of plaintiff's amended complaint, it is important to note the requirement that the plaintiff establish a basis for holding each of the named defendants personally accountable for any constitutional deprivations.  Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Some of the defendants named in plaintiff's amended complaint,

15

including, for example, former DOCS Commissioner Goord and Clinton Superintendent Artus, are potentially named based upon their supervisory responsibilities.  It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, (2d Cir. 2007); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

In reviewing plaintiff's claims for facial sufficiency the court must be particularly attuned to the issue of whether the plaintiff has adequately identified a basis for holding any particular named defendant accountable

16

for the constitutional deprivations alleged.  Failing such identification, there can be no liability and any defendant whose involvement in the unconstitutional conduct alleged is entitled to judgment on the pleadings dismissing plaintiff's claims against him or her.

C.    Plaintiff's First Amendment Claims

Leaving aside his claim of denial of access to the courts, which is addressed elsewhere in this report, and also implicates a right arising under that provision, the particulars of plaintiff's First Amendment free speech, free exercise and right of assembly claims are not readily apparent.  Interpreting plaintiff's First Amendment claim, which is admittedly vague, as asserting a cause of action for retaliation, defendants argue in their motion that such a claim has not been properly stated.  In response, plaintiff disavows any claim of unlawful retaliation, instead asserting that his First Amendment claim arises from the efforts of the defendants to silence him in response for expressing his political and religious views.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law. . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ."  U.S. Const. amend. I.  The protections afforded by the

First Amendment, like many other constitutional guarantees, are not necessarily forfeited by a person upon his or her entry into prison; many rights conferred by the Constitution, however, are by definition extinguished, or in some cases give way to legitimate, counterveiling penological concerns, upon incarceration.  *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004).  As the Supreme Court has noted, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-38 (1977).

While the point of demarcation is not always readily discernable, it is clear that prison inmates enjoy some measure of First Amendment protection, including the rights of free speech, association, and freedom of religious exercise, yet forfeit those rights to the extent they are incompatible with legitimate penological considerations.  *See Pell v. Procunier*, 417 U.S. 812, 822 , 94 S. Ct. 2800, 2804 (1974).  As the Supreme Court has observed,

> [a] prison inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are

> asserted to inhibit First Amendment interests must
> be analyzed in terms of the legitimate policies and
> goals of the corrections system, to whose custody
> and care the prisoner has been committed in
> accordance with due process of law.

*Id.*

Thus, for example, prison officials may not deter the right of a prison

inmate to voice complaints regarding prison conditions through

established processes by taking adverse actions which are intended, or

which have the affect, of chilling or abridging such rights.  *See Gill v.*

*Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).  Conversely, and at the

other end of the spectrum, prison officials are empowered to control the

use of threatening and abusive language by inmates.  *Jermosen v.*

*Coughlin,* 878 F. Supp. 444, 450-51 (N.D.N.Y. 1995) (McAvoy, C.J.).  The

right of officials to control inmate speech and other behavior through the

imposition of measures reasonably calculated to preserve the safety and

security of a prison facility, its employees and inmates, is well-established,

even though such measures may impinge upon an inmate's ability to

speak freely or to associate with others.  *See Auleta v. LaFrance,* 233 F.

Supp. 2d 396, 399 (N.D.N.Y. 2002) (Kahn, D.J.) (noting that restrictions on

inmate communication are constitutional if reasonably related to legitimate

penological interests) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S. Ct.

2254, 2261 (1987)).

From his response to defendants' motion it appears that plaintiff's First Amendment claim stems from alleged efforts on the part of defendants Spitzer, Mueller, Potts, and Tenent to silence him through ordered assassination.[10]  *See* Plaintiff's Memorandum (Dkt. No. 84-2) at 5-7.  Because plaintiff's first cause of action fails to allege specific participation on the part of any defendant other than former Governor Spitzer in the First Amendment violation, the remaining defendants are entitled to dismissal of that claim against them, as a matter of law.

The question of whether defendant Spitzer is entitled to dismissal of plaintiff's First Amendment claim presents a somewhat closer question. Without doubt, adverse action taken by defendant Spitzer against the plaintiff with the intended purpose of interfering with his speech, religious exercise, or association would potentially implicate the protections of the First Amendment.  In this instance, however, plaintiff has not alleged *facts* which would support a plausible First Amendment claim.  While plaintiff's complaint makes vague reference to his activity of speaking out on matters which could potentially be viewed as of public concern, he does

---

[10]     As was previously noted, defendants Mueller, Potts and Tenent, who have yet to be served, are entitled to dismissal of plaintiff's complaint without prejudice, on the basis that the court lacks jurisdiction over them.  *See* p. 9, n.6, *ante*.

not identify any concrete interference with the exercise of his religious

exercise and his freedom of association.  Additionally, plaintiff's complaint

makes no specific allegations as to defendants' actions in attempting to

silence him other than to wildly speculate that former Governor Spitzer

has initiated or endorsed a plot to have him killed.  Such outlandish

allegations, devoid of specifics, cannot withstand scrutiny and should not

be permitted to survive defendants' motion.  *See Russian Standard*

*Vodka*, 523 F. Supp. 2d at 385; *see also Aguilar*, 1999 WL 1067841, at *2-

3 (finding that plaintiff's complaint was devoid of any arguable basis in law

or fact, highlighting that most of his factual allegations, to the extent they

were even understandable, were conclusory, vague and baseless).  I

therefore also recommend dismissal of plaintiff's First Amendment claims

against defendant Spitzer as lacking in palpable facial merit.

     D.    <u>Failure to Protect</u>

     Plaintiff's second and third causes of action both stem from alleged

failure on the part of DOCS prison officials to protect him from threats of

harm at the hands of fellow inmates.  Plaintiff's second cause of action

alleges that this failure is tantamount to cruel and unusual punishment, in

violation of the Eighth Amendment, while his third claim asserts that by

their actions, defendants have also deprived him of substantive due

process, as guaranteed under the Fourteenth Amendment.

      1.    <u>Eighth Amendment</u>

Unquestionably, under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates; this duty includes within it an obligation to protect prisoners from harm caused by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833-34, 114 S. Ct. 1970, 1976-77  (1994) (citations omitted); *see also Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (Homer, M.J.) (citing, *inter alia*, *Farmer*).  When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight.  *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F. Supp. 2d at 124-25; *Coronado v. Lefevre*, 886 F. Supp. 220, 224 (N.D.N.Y. 1995) (Scullin, J.). As can be seen, this analysis entails both an objective and subjective inquiry.

      a.    <u>Objective Test</u>

In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized

measure of life's necessities." *Dawes v. Walker*, 239 F.3d 489, 493-94 (2nd Cir. 2001) (internal quotations and citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002). Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Dawes*, 239 F.3d at 493; *Matthews*, 36 F. Supp. 2d at 124-25.

b.     Subjective Test

To demonstrate that defendants were deliberately indifferent to his or her plight, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his or her health and safety – "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Matthews*, 36 F. Supp. 2d at 124-25.

2.     Fourteenth Amendment

Claims involving the alleged failure of prison officials to protect an inmate from harm are also subject to review under the Fourteenth Amendment's substantive due process provision. Though the requisite

23

mental state for establishing a Fourteenth Amendment failure to protect claim is somewhat unclear, it is at least apparent that to be legally cognizable under that provision, the actions alleged on the part of a defendant must transcend mere negligence.  *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670 (1986) (lack of due care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986) (same); *Morales v. New York State Dep't of Corrs.*, 842 F.2d 27, 30 (2nd Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *Abdul-Matiyn v. New York State Dep't of Corr. Servs.*, 871 F. Supp. 1542, 1546-47 (N.D.N.Y. 1994) (Chin, J.) (citing *Morales*).

Plaintiff's failure to protect cause of action is set forth in wholly conclusory terms.  *See*, *e.g.*, Amended Complaint (Dkt. No. 15) ¶ 30 ("The plaintiff is subjected to crediable [sic] threats because (NYSDOC) prison population believes he's Ku Klux Klan which credible threats of immediate [sic] are not acted on [by various of the defendants]. . . . [t]he plaintiff is subjected to psychological torture by imminent threat of death by [various defendants] . . . ."  Aside from letters from his counsel echoing these allegations, in similarly conclusory terms, plaintiff has offered no specific

24

information to establish that he was incarcerated under conditions posing a substantial risk of harm.  Plaintiff's complaint does not recount, for example, any incidents whereby he was assaulted by any fellow inmates, or that such an assault was threatened and imminent at any of the various facilities in which he was housed. Similarly, plaintiff's complaint fails to identify which of the various defendants are alleged to have had knowledge of the existence of conditions posing a substantial risk of serious harm, but were deliberately indifferent to that risk.

Under these circumstances, plaintiff has failed to comply with the Second Circuit's directive that he allege objective facts demonstrating the existence of a plausible claim of unlawful failure to protect on the part of one or more of the defendants, in violation of the Eighth and Fourteenth Amendments.  Accordingly, defendants are entitled to judgment on the pleadings dismissing that claim.  *See*, *e.g.*, *Dawes*, 239 F.3d at 494 (affirming dismissal of failure to protect claim where plaintiff did not allege that he was assaulted or even threatened by other inmates); *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) ("Plaintiffs' testimony that they lived in fear of assault from their cellmates is not an objectively serious enough injury to support a claim for damages.").

    E.    <u>Conspiracy to Deprive Plaintiff of Access to the Courts</u>

In his fourth cause of action plaintiff alleges that defendants conspired to deprive him of access to the courts "by stirring up Negro and Hispanic prisoners by telling them plaintiff is Klu Klux Klan."  Amended Complaint (Dkt. No. 15) ¶ 60.  Plaintiff also asserts that the orders to assassinate him were intended to punish him and suppress his access to the courts to redress his grievance and petition the government for relief. *Id.* ¶ 66.  Defendants seek dismissal of this claim as a matter of law, based upon plaintiff's failure to establish the requisite elements of a conspiracy under section 1983.

### 1.    Conspiracy Generally

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that a defendant "acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

Plaintiff's complaint is exceedingly short on specifics in providing the

26

identity of the parties to the alleged conspiracy, a showing of agreement or a "meeting of the minds", and the details as to the time and place of conspiracy as well as its objective.  While it is true, for example, that the plaintiff alleges an agreement between defendants Tenent, Strickland, Mueller and Potts, acting in concert with former Governor Spitzer, to have Chalif assassinated "on sight", the complaint lacks any details as to when that agreement was formed and whether it was oral, in writing, or both. Such deficiencies are fatal to plaintiff's conspiracy claim.[11]  *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999).  Because plaintiff has asserted his conspiracy claims in only vague and conclusory terms, conspicuously lacking in any detail regarding the participants in the conspiracy, the meeting of the minds, and an overt act committed in furtherance of the goal of the conspiracy, I recommend dismissal of plaintiff's conspiracy claim as a matter of law.  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied*, 499 U.S. 937, 111 S. Ct. 1399 (1991); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

      2.    <u>Access to the Courts</u>

---

[11]    It should be noted, moreover, that by its express terms plaintiff's conspiracy cause of action relates to his access to the courts, rather than defendants' alleged efforts to have him assassinated in order to interfere with his First Amendment free speech, religious exercise, and assembly rights.

Even assuming plaintiff had properly pleaded the elements of the conspiracy, he would also be required to demonstrate that the object of the conspiracy was to deprive him of his civil rights.  In this instance, Chalif alleges that the objective of the conspiracy was to deprive him of access to the courts, asserting that in light of his commitment to OMH custody, on five separate occasions he was denied access to his legal work in the law library for a combined period of four years, thus interfering with this access to the courts.  *See* Plaintiff's Memorandum (Dkt. No. 84-2) at 14.  The court must therefore evaluate the legal sufficiency of this claim in order to determine whether his fourth cause of action can withstand defendants' dismissal motion.

An inmate's constitutional right to "meaningful" access to the courts is firmly established.  *See Bounds v. Smith,* 430 U.S. 817, 823, 97 S. Ct. 1491, 1495 (1977) (citations and internal quotation marks omitted).  That right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Id.* at 828, 97 S. Ct. at 1498.  The Court has clarified, however, that

prison law libraries and legal assistance programs are not

28

> ends in themselves, but only the means for ensuring a
> reasonably adequate opportunity to present claimed violations
> of fundamental constitutional rights to the courts.  Because
> *Bounds* did not create an abstract, freestanding right to a law
> library or legal assistance, an inmate cannot establish relevant
> actual injury simply by establishing that his prison's law library
> or legal assistance program is subpar in some theoretical
> sense.

*Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996) (internal

quotations and citations omitted).  Accordingly, an inmate asserting a

denial of court access claim predicated upon the lack of available library

resources or meaningful assistance "must go one step further and

demonstrate that the alleged shortcomings in the library or legal

assistance program hindered his [or her] efforts to pursue a legal claim."

*Id.*  In other words, to establish a violation of the right of access to the

courts, a plaintiff must demonstrate that defendants' interference caused

him or her actual injury – that is, that a "nonfrivolous legal claim had been

frustrated or was being impeded" as a result of defendants' conduct.  *Id.* at

353, 116 S. Ct. at 2181.  Since plaintiff's complaint fails to allege any

prejudice in the form of interference with his pursuit of a non-frivolous legal

claim, this provides an independent basis for dismissal of plaintiff's section

1983 conspiracy claim.  *See King v. City of New York*, Nos. 99 CV 3669,

05 CV 3247, 2007 WL 959696, at *13 (E.D.N.Y. Mar. 30, 2007).

There is yet another basis for dismissal of plaintiff's fourth cause of action.  While the graveman of the claim is a conspiracy by the defendants to deny him access to the courts by placing him in OMH custody, nowhere does the plaintiff identify the specific defendants responsible for that placement and the resulting deprivation.  Plaintiff's fourth cause of action is therefore subject to dismissal on the additional, independent basis of his failure to demonstrate the personal involvement of any of the defendants in the denial of court access.  *See Taylor v. Santana*, No. 05 Civ. 1860, 2007 WL 737485, at *6 (S.D.N.Y. Mar. 6, 2007) (dismissing plaintiff's right of access to the courts claim because plaintiff failed to establish the personal involvement of any of the defendants in depriving him of that right).

F.    Failure to Exhaust

Stripped of its conclusory allegations, all that is left of plaintiff's complaint is the assertion that excessive force was exerted against him by defendants Brown and Betters on or about January 15, 2006.[12]  *See*

---

[12]    Plaintiff's complaint does not contain a cause of action specifically asserting the use of excessive force.  In light of his *pro se* status, however, the court is obligated to overlook this defect and to interpret his complaint in the face of defendants' motion, as asserting the strongest argument which could be made, consistent with the facts alleged.  *Diaz v. United States,* ___ F.3d ___, 2008 WL 495653, at *4 (2d Cir. Feb. 26, 2008) (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1990)).

Amended Complaint (Dkt. No. 15) ¶ 14.  In their motion defendants argue that any such claim is barred based upon plaintiff's failure to exhaust available administrative remedies before commencing this action on October 26, 2005.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being

31

haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* __ U.S. __, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 126 S. Ct. at 2388; *see also*

*Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.  *Macias*, 495 F.3d at 41; *see* *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times.  *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense.  *Macias*, 495 F.3d at 41;

*Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[13]  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS"), and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[14]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a

---

[13]     In practicality these three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

[14]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

The excessive force claim asserted against defendants Brown and Betters involves terms and conditions of incarceration, and thus is a matter which could have been pursued through the New York IGP. *Heath v. Saddlemire*, No. 96-CV-1998, 2002 WL 31242204, at *4 (N.D.N.Y. Oct. 7, 2002).  It therefore appears that plaintiff had available to him an administrative remedy which should have been pursued to completion before pressing his excessive force claim in this action.

While not asserting any facts regarding whether plaintiff did in fact file a grievance concerning the incident, in light of the procedural posture

35

of the case, defendants argue that since the use of force occurred on January 15, 2006, after the commencement of this action, exhaustion could not have been accomplished before plaintiff's complaint was filed.

Under the PLRA, exhaustion of internal available administrative remedies must be complete prior to commencement of suit. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983 (2002). The fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing. *Id.*

In this instance plaintiff could not possibly have fulfilled his exhaustion requirement at the time this action was commenced, since the alleged assault forming the basis of his claim did not occur until later. While plaintiff attempts to salvage his claim by asserting the relation back doctrine employed in certain instances to revive otherwise untimely claims, I am unaware of any cases from this or any other circuit which would permit the inverse – that is, to deem an action commenced, for purposes of the exhaustion requirement, as of the date of amendment rather than when the case was filed. And, while the court would ordinarily be reluctant to address the question of exhaustion in a motion for judgment on the pleadings, without the benefit of a more fully developed

36

record, it is clear in this instance that exhaustion had not yet occurred when this action was filed and, accordingly, plaintiff's last remaining, facially meritorious claim, is subject to dismissal, without prejudice, based upon his failure to exhaust available administrative remedies.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

In its decision dated March 8, 2006, reversing this court's earlier dismissal of plaintiff's complaint as patently lacking in merit, the Second Circuit court determined that the plaintiff should be afforded "an opportunity to amend his complaint to include *objective facts* to support his Eighth Amendment claim."  See Decision dated March 8, 2006, issued as a mandate on April 24, 2006 (Dkt. No. 10) (emphasis added) (citation omitted).  Despite having been given that opportunity, however, the plaintiff interposed a complaint which suffers from the same infirmities as that previously dismissed, containing a host of allegations against many defendants, including high profile figures, stated in spectacular yet grossly conclusory terms generally lacking in any factual specifics.  Aside from the claim that excessive force was used against him by defendants Brown and Betters – the latter of whom has never been served and thus is not a party to the action – plaintiff's allegations fail to satisfy even the most generous pleading requirements of the Federal Rules of Civil Procedure.  With

37

respect to that excessive force claim, the plaintiff failed to fulfill his obligation to exhaust administrative remedies before filing suit.  Under these circumstances I recommend dismissal of plaintiff's complaint in its entirety. [15]

Accordingly, it is hereby

RECOMMENDED, that defendants' motion for judgment on the pleadings (Dkt. No. 78) be GRANTED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

---

[15]     In light of this determination I have not addressed the qualified immunity argument asserted by defendants as an independent ground for dismissal of plaintiff's claims in this action.  *See Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (2001).

Dated:      March 17, 2008
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge